SHARON L. ANDERSON (SBN 94814)
County Counsel
CHRISTOPHER B. WHITMAN (SBN 223636)
Deputy County Counsel
COUNTY OF CONTRA COSTA
651 Pine Street, Ninth Floor
Martinez, California 94553
Telephone:   (925) 335-1800
Facsimile:    (925) 335-1866
Email: christopher.whitman@cc.cccounty.us

Attorneys for Defendants
DEPUTY COUNTY and SERGEANT HAYNES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDJUAN C. SCOTT,<br><br>             Plaintiff,<br><br>v.<br><br>DEPUTY COUNTY, et al.,<br><br>             Defendants. | Case No. C11-04728 YGR (PR)<br><br>DECLARATION OF STEVE EVANS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS<br><br>[no hearing scheduled]<br><br>Courtroom 3, Third Floor<br>The Hon. Yvonne Gonzalez Rogers |

I, Steve Evans, declare as follows:

　　　1.　　I am over the age of eighteen and a resident of the State of California. I make this declaration from my own personal knowledge and if called upon to testify as a witness, could and would competently testify thereto.

　　　2.　　I am employed as a Lieutenant by the Office of the Sheriff-Coroner of Contra Costa County (the "Sheriff's Office"). I have been employed by the Sheriff's Office for approximately 16 years. I am presently assigned to the Court Security Services Unit of the Sheriff's Office, I previously served in the Custody Administrative Services Bureau between September 16, 2010 and April 2, 2012, and previously I was assigned to the Patrol Division

1 and the Custody Services Bureau of the Sheriff's Office. While assigned to the Custody Services Bureau (the "CSB"), I was a training sergeant for three years.

3. The CSB is the division of the Sheriff's Office that is responsible for the operation of the Sheriff's detention facilities, including the Martinez Detention Facility (the "MDF"). When I was assigned to the Custody Administrative Services Bureau, I was responsible for the administrative operations of all the units within the CSB, including the detention facilities. One of the duties I hold in this assignment is the preparation and review of the CSB Policy and Procedure Manual (the "CSB Manual") that governs the operation of our units and actions of our employees.

4. As part of the normal business practice of the CSB, we maintain historical copies of CSB Manuals, with manuals dating back to 1968. As part of the normal operation of the Administrative Services Unit, I managed the training of Bureau Personnel, the classification of inmates within the Bureau, the management of *pro se* inmates within the Bureau, the preparation of responses to subpoenas and lawsuits, the presentation of materials in court, and the maintenance of the business records within the Bureau. As the Custodian of Records for the Bureau, I have access to and utilize booking records, which includes all grievances, classification records, and other records related to inmates in custody of the Office of the Sheriff.

5. The CSB maintains a written policy and procedure manual that applies to all County detention facilities, including the MDF. These policies and procedures address the requirements for inmates to properly submit and appeal grievances, including grievances regarding medical care. Inmate Edjuan C. Scott was incarcerated in the MDF between August 9, 2008 and June 21, 2012. Attached hereto as **Exhibits A, B,** and **C** are true and correct copies of the: (A) "Inmate Grievance Procedures," (B) "Inmate Appeals Process," and (C) "Inmate Request Procedures," all of which were applicable during the incarceration of Edjuan C. Scott.

6. The grievance procedure is used to investigate and resolve the inmates' concerns or to provide further direction or explanation to the inmates. Among other

1 | requirements, the Inmate Grievance Procedures first require that an "Informal Grievance" be
2 | submitted to a housing unit deputy prior to submitting a formal written grievance. *See* Exhibit
3 | A. The informal grievance is not written, and typically is communicated orally by the inmate.
4 | If the informal grievance is not resolved to the inmate's satisfaction, then he is required to
5 | submit a "Formal Grievance." The formal grievance must be: in writing; submitted within 48
6 | hours of the incident; submitted on the facility-issued form; and given to a deputy for signature
7 | and receipt. *Id.* The inmate has a right to appeal any decision on a grievance. *Id.*

8     7.     The Inmate Appeals Process gives inmates the right to appeal any grievance
9 | disposition. *See* Exhibit B. The appeal must be submitted in writing on the facility-issued
10 | form. *Id.* The same form is used for requests, grievances, and appeals. Copies of all written
11 | appeals, like the copies of all written grievances and requests, are placed in the inmate's
12 | booking file. Among other requirements, the Inmate Appeals Process requires that inmates
13 | "**appeal previous decisions until** they have been satisfied or **the detention division chain of**
14 | **command has been exhausted**." *Id.* (emphasis added). From bottom to top, the discrete
15 | steps in the chain of command at the MDF during the pendency of Edjuan C. Scott's grievance
16 | and appeal process were: **Level 1** (Informal Grievance to a Deputy); **Level 2** (Formal
17 | Grievance to a Deputy); **Level 3** (Appeal to the Facility Commander or his designee); **Level 4**
18 | (Appeal to the MDF Facility Captain); **Level 5** (Appeal to the Detention Division Captain);
19 | and finally **Level 6** (Appeal to the CSB Commander). An inmate must proceed up the chain of
20 | command through each of the six, discrete levels of appeal – and do so in the proper order – to
21 | completely and properly exhaust his administrative remedies.

22     8.     During the pendency of Edjuan C. Scott's grievance and appeal process, the
23 | Detention Division Captain was Will Duke (rank: Capt.), and the CSB Commander was Matt
24 | Schuler (rank: Cmdr.).

25     9.     When inmates are brought into the custody of the Sheriff's Office, they are all
26 | booked at the MDF. During the booking process, inmates are required to watch an orientation
27 | video which provides an overview of jail policies and procedures. Inmates are aware from the
28 | video that the inmate policies and procedures, including the policies and procedures attached

hereto as Exhibits A, B, and C, are posted on each housing unit for the inmates to consult and review.

10. In addition to the inmate orientation, inmates can learn about jail policies and procedures from any staff member, who will explain the process and advise the inmate to read the policies and procedures posted on each housing unit. There is also a public information manual available on all housing units upon request. Further, as a matter of custom and practice, it is very common for inmates to learn the inmate grievance and appeal procedures from fellow inmates in the housing unit.

11. All inmate incident reports, formal disciplinary actions, inmate requests, grievances, appeals, and the responses thereto are maintained in each inmate's booking file. Pursuant to the grievance procedures, all grievances and their written responses are placed in the inmate's booking file. When inmates are brought into the custody of the CSB, each inmate is assigned a unique identifying booking number. The distinct booking number is maintained on inmates from the first day of their custody time until they are released by the CSB. A booking file is established for each inmate and corresponds with the unique booking number. If an inmate is released and then re-booked, a new booking number is assigned. The booking file number used for Edjuan C. Scott for the time at issue was CC08AD969.

12. I have reviewed the booking file for Edjuan C. Scott and all of his grievances. I also reviewed the legal claims by Mr. Scott regarding the allegedly insufficient medical treatment for his left shoulder injury. Mr. Scott did not completely and properly exhaust his administrative remedies regarding the allegedly insufficient medical treatment for his left shoulder injury, including each distinct level of appeal required by the grievance procedures. He did not do this formally or informally. Specifically, Mr. Scott never submitted a written appeal to: the Detention Division Captain, Will Duke (Level 5); or the CSB Commander, Matt Schuler (Level 6). Mr. Scott also failed to follow the chain of command in the required order, i.e. from bottom to top, because he unsuccessfully attempted to submit his Level 2 written grievance directly to Commander Schuler, rather than to a deputy in his housing unit.

I declare under penalty of perjury, under the laws of the United States and the State

1 | of California, that the foregoing is true and correct, and that this declaration is executed on the
2 | date indicated below at Martinez, California.

4 | DATED: September 18, 2012

   _____
   STEVE EVANS

---

DECLARATION OF STEVE EVANS IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS – Case No. C11-04728 YGR (PR)

# EXHIBIT A

| Contra Costa County **Office of the Sheriff** CSB Policy and Procedure | DETENTION | NUMBER: 2.16.04 |
|---|---|---|
| | **RELATED ORDERS:** MJS 1073 *Porter v. Nussle, 534 U.S. 516, 122 Ct. 983, 152 L. Ed. 2d (2002)* *Morgan v. Maricopa County (2003)* | |
| **ISSUE DATE:** 01-13-04 **REVISION DATE:** 07-01-04 | **CLEARANCE:** | PUBLIC |
| **CHAPTER:** Inmate Rights, Rules and Discipline | **SUBJECT:** Inmate Grievance Procedures | |

I. **POLICY**

    A. Inmates are entitled to utilize the inmate grievance procedure to resolve disputes and receive a written response in a timely manner without fear of reprisal or punitive action.

    B. Any action identified as directly affecting the inmate's conditions of confinement, may be grievable. Grievance procedures will apply to questions concerning:

        1. Medical care

        2. Conditions of confinement

        3. General classification procedures

        4. General disciplinary procedures

        5. Inmate programs participation

        6. Telephone, mail and visiting procedures

        7. Food, clothing and bedding

        8. Religious preference

II. **PROCEDURE**

    A. INFORMAL GRIEVANCES:

        1. Inmates will attempt to resolve any grievance informally with housing unit deputies or supervising staff prior to submitting a formal written grievance.

    B. FORMAL GRIEVANCE PROCESS:

        1. Inmate Grievances must be submitted within 48 hours of the date of the incident or condition being observed.

        2. Inmates will submit all grievances on facility issued Inmate Request Forms.

            a. Inmates must fill out the Inmate Request Form in its entirety to ensure the

                grievance is handled in a timely manner.

       b.     Inmates must ensure that the grievance is given to a deputy for signature and receipt.

3.     Deputies will legibly sign their name and employee number and date all grievances upon receipt and return a receipt to the inmate.

4.     Deputies receiving the Inmate Grievance will attempt to resolve the grievance prior to routing.

       a.     If the deputy is unable to resolve the grievance within their shift assignment, the deputy will write a brief description of what attempts were made to resolve the issue.

       b.     The deputy will forward the grievance to the most appropriate authority capable of resolving the grievance.

- The deputy will be responsible for routing grievances based on its nature and not whom the grievance is addressed to.
- The deputy will route all grievances to their shift supervisor in the event they are not able to determine proper routing.
- The deputy will write the date and to whom the grievance was routed on the inmate grievance prior to forwarding.

5.     The staff member investigating the grievance will notify the inmate if it appears the investigation will take more then seven (7) days from the time of submission.

6.     The staff member will provide a written response to the inmate stating the final disposition of the grievance.

       a.     Reasons must be provided if any grievance is denied.

       b.     Corrective action must be provided if any grievance has been validated.

- Corrective actions taken against staff members named in any grievance will not be provided.

7.     The staff member will place all remaining copies of the grievance into the inmate's booking.

8.     The inmate has the right to appeal any decision made by the investigating staff member.

       a.     Appeals procedures can be located in CSB section 2.16.05.

9.     The Facility Commander will be responsible for reviewing all grievances upon final disposition.

# EXHIBIT B

| Contra Costa County **Office of the Sheriff** CSB Policy and Procedure | DETENTION | NUMBER: 2.16.05 |
|---|---|---|
| | RELATED ORDERS: None | |
| ISSUE DATE: 01-13-04 REVISION DATE: 07-01-04 | CLEARANCE: | PUBLIC |
| CHAPTER: Inmate Rights, Rules and Discipline | SUBJECT: Inmate Appeals Process | |

I. **POLICY**

    A.    An inmate may appeal informal or formal disciplinary actions, or any grievance disposition.

        1.    The inmate must submit the appeal on an inmate request form to the Facility Commander or designee within five (5) days of the disciplinary hearing or grievance disposition being completed.

        2.    The Facility Commander's considerations will be based on the following:

            a.    Disciplinary Actions

- The disciplinary hearing process.
- Evidence relevant to the incident and disciplinary hearing.
- Proportionate sanctions to the offense(s).

            b.    Grievance Dispositions

- The grievance process.
- Information and material related to the grievance.

            c.    The Facility Commander or designee will respond in writing within five (5) days of the inmate appeal.

            d.    The response will either sustain or overrule the original decision in disciplinary actions.

- Additional sanctions are not permitted.

            e.    Disciplinary sanctions during an appeal will not be stayed.

- In the event the disciplinary decision is overruled, the Facility Commander will determine what steps are reasonable to eliminate the effect of the sanctions.

f. The inmate shall have the right to appeal previous decisions until they have been satisfied or the detention division chain of command has been exhausted. Consecutive appeals for the same incident should be routed to the Division Captain for final review.

- The Facility Captain will have final review of all appeals.

g. A copy of the appeal(s) and results will be forwarded to the Facility Commander and the inmate's booking.

**EXHIBIT C**

| Contra Costa County **Office of the Sheriff** CSB Policy and Procedure | DETENTION | NUMBER: 2.16.06 |
|---|---|---|
| | RELATED ORDERS: MJS 1073 | |
| ISSUE DATE: 01-13-04 REVISION DATE: 07-01-04 | CLEARANCE: | PUBLIC |
| CHAPTER: Inmate Rights, Rules and Discipline | SUBJECT: Inmate Request Procedures | |

I. **POLICY**

    A. Deputies will ensure that all inmate requests for service are processed properly and in a timely manner.

    B. Inmates shall use an inmate request form to request or provide information or services for the following:

        1. Custody status

        2. Medical triage requests (in the absence of triage phones)

        3. Housing assignments

        4. Work assignments

        5. Inmate programs and services

        6. Legal materials

        7. Correspondence discrepancies

II. **PROCEDURE**

    A. INMATE REQUESTS

        1. Inmates should attempt to have their request answered informally prior to submitting a written inmate request.

        2. Inmates will submit all Inmate Request Forms to the housing unit deputy.

            a. Inmates must fill out the Inmate Request Form in its entirety to ensure the request is handled in a timely manner.

                • Deputies will not route incomplete Inmate Request Forms and shall return it to the inmate for correction.

            b. Inmates must ensure that the request is given to a deputy for signature and receipt.

3. Deputies will legibly sign their name and employee number and date all requests upon receipt and return a receipt to the inmate.

4. Deputies receiving the Inmate Request will attempt to answer the request prior to further routing.

   a. If the deputy is unable to answer the request within their shift assignment, the deputy will write a brief description of what attempts were made to complete the task.

   b. The deputy will forward the request to the most appropriate authority capable of answering it.

   - Housing unit deputies will answer all requests in which the information is available by JMS or through contact with operations staff.

   - The deputy will be responsible for routing requests based on its nature and not whom the request is addressed to.

     - This will prevent unnecessary delay in the inmate request process.

   - The deputy will route all requests to their shift supervisor in the event they are not able to determine proper routing.

   - The deputy will write the date and to whom the request was routed on the Inmate Request Form prior to forwarding.

5. The staff member answering the request will provide a written response to the inmate's request within two (2) days.

   a. Reasons must be provided if any request is denied.

6. The staff member answering the request will place a copy of the inmate request response in the appropriate housing unit mailroom box. Remaining copies of the inmate request will be placed into the inmate's booking.